**U.S. Department of Justice**
Civil Division, Federal Programs Branch

Olivia Hussey Scott
Senior Counsel

Tel.: (202) 616-8491
E-mail: olivia.hussey.scott@usdoj.gov

Hon. Vernon D. Oliver
Abraham Ribicoff Federal Building
United States Courthouse
450 Main Street
Hartford, CT 06103

Re: *ACLU-CT v. Blanche*, No. 3:26-cv-01458 (D. Conn.)

Dear Judge Oliver,

Defendants write to request a pre-motion conference by telephone in the above-referenced case for a proposed motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In support of this request, Defendants submit:

Plaintiff, the American Civil Liberties Union of Connecticut ("ACLU-CT"), alleges a violation of their purported First Amendment right to "contemporaneous access" to administrative immigration court documents by Defendants Attorney General Blanche and Assistant Chief Immigration Judge Munson of the Hartford Immigration Court, in their official capacities. *See* Compl., ECF No. 1. Specifically, they allege that they submitted a written request to the Hartford Immigration Court on July 24, 2026, that requested the production of two categories of immigration court records showing: (i) "[a]ll docket numbers and case captions—including respondents' full names—in which the Hartford Immigration Court held any hearing" from May to July 2026; and (ii) "[a]ll in absentia removal orders issued by the Hartford Immigration Court" during May to July 2026, "including docket number and caption with respondents' full names." *Id.* ¶ 29. Plaintiff's request "expressly stated that it was 'not a Freedom of Information request'" and that it "was made pursuant to ACLU-CT's 'First Amendment right of access to judicial documents.'" *Id.* ¶ 30. Plaintiff's "request asked for a response by August 10, 2026." *Id.* ¶ 31. Plaintiff reiterated its request by email sent on September 4, 2026. *Id.* ¶ 34. Then, on September 9, 2026, Plaintiff filed suit in this case asserting a First Amendment violation because the immigration court did not produce or provide access to the requested records. *Id.* Plaintiff contends this alleged failure "depriv[ed] it of access to judicial records necessary to fulfill its organizational mission of monitoring immigration proceedings, identifying due process violations, and informing the public." *Id.* ¶ 36.

Plaintiff's complaint should be dismissed for both lack of standing and a failure to state a claim upon which relief can be granted because, *inter alia,* there is no First Amendment right to compel public access to or the production of non-public government-held records. *See Houchins v. KQED, Inc.* 438 U.S. 1, 11 (1978) (plurality op.) (collecting cases and holding that "[t]here is an undoubted right to gather news from any source by means within the law but that affords no basis for the claim that the First Amendment compels others-private persons or governments-to supply information." (citation omitted)); *see also id.* at 15 ("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control.").

First, to show standing Plaintiff must show they have suffered an injury that is concrete and particularized and actual or imminent, fairly traceable to the defendants, and likely to be redressed by

a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982) (discussing the requirements of organizational standing). Without a First Amendment right to the records sought, there can be no First Amendment injury, especially given that Plaintiff could submit a request to DOJ's EOIR for production of these records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

Second, the absence of a First Amendment right of access also means Plaintiff's claim of a First Amendment violation has no legal basis and must fail. The First Amendment "do[es] not guarantee the public a right of access to information generated or controlled by the government . . . . The Constitution does no more than assure the public and the press equal access once the government has opened its doors." *Houchins*, 438 U.S. at 16 (Stewart, J., concurring). "The question of access to government-held information is clearly a legislative task which the Constitution has left to the political processes." *Id.* at 12. As the Supreme Court explained, "[w]e must not confuse what is 'good,' 'desirable,' or 'expedient' with what is constitutionally commanded by the First Amendment. To do so is to trivialize constitutional adjudication." *Id.* at 13. The FOIA is an example of precisely this type of legislative decision making. *Id.* at 13 n.7. Although the FOIA might provide a separate path for Plaintiff to access the documents sought, it provides no support for Plaintiff's claim here that they possess a *constitutional* right to compel the government to produce these records outside of the FOIA process. The Supreme Court has repeatedly said there is no constitutional right to the information available under FOIA. *McBurney v. Young*, 569 U.S. 221, 232 (2013) (collecting cases).

Plaintiff's complaint incorrectly relies on a distinguishable line of Supreme Court and Second Circuit cases that recognize a First Amendment right of public access to certain judicial proceedings and judicial documents with an Article III nexus—as opposed to the administrative immigration court documents at issue here. *See* Compl., ¶¶ 19-25. Specifically, the Supreme Court has recognized a First Amendment right to attend certain criminal court proceedings. *See, e.g., Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) (criminal trials); *Press-Enterprise Co. v. Superior Court* ("*Press-Enterprise I*"), 464 U.S. 501 (1984) (criminal voir dire proceedings); *Press-Enterprise Co. v. Superior Court* ("*Press-Enterprise II*"), 478 U.S. 1 (1986) (criminal preliminary hearings). And the Second Circuit cases cited in the complaint have similarly recognized that this First Amendment public access right applies to certain documents filed in Article III civil cases. *See Hartford Courant v. Pellegrino*, 380 F.3d 83, 91-96 (2d Cir. 2004) (docket sheets in civil court litigation); *see also Joy v. North*, 692 F.2d 880 (2d Cir. 1982) (documents submitted as part of a summary judgment motion in private shareholder derivative litigation); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2006) (documents filed under seal in connection with a motion for summary judgment). But these cases do not support Plaintiff's claim that administrative immigration court documents are "judicial documents" subject to a First Amendment right of access. As the Second Circuit explained in *Lugosch*, "judicial documents" are subject to public access rights because of the Article III judicial function and process; the rationale for access "is based on the need for federal courts, although independent—indeed particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)); *see also, generally, id.* at 119-124 (collecting and discussing cases). The immigration court documents that Plaintiff requests are not Article III "judicial documents," of course, and immigration courts do not have the same independence as federal Article III courts. Thus, the Supreme Court and Second Circuit cases upon which Plaintiff relies do not support their position.

Nor does the Second Circuit's holding in *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286 (2d Cir. 2012), where the Court extended the First Amendment right to attend criminal trials from *Richmond Newspapers* and *Press-Enterprise I* & *II* to adjudicatory proceedings before the New York City Transit Authority's Transit Adjudication Bureau ("TAB"), a body that acts very much as a criminal court. *Id.* at 290-91. Specifically, the TAB is an administrative body created by a 1984 statute "to lessen the burden on the Criminal Court" and where "[t]he police officer citing the violation has discretion to choose whether to issue a citation to Criminal Court or a notice of violation to the TAB" and "no violation appears to be, by definition, only returnable to one of the venues." *Id.* at 290. The Court therefore applied the Supreme Court's "experience and logic" test, wherein "[f]irst, courts should inquire into 'experience' (history) and 'consider[] whether the place and process have historically been open to the . . . public. Second, courts should consider 'logic' (functionality) and ask whether public access 'plays a significant positive role in the functioning of the particular process in question.'" *Id.* at 297-98 (quotation omitted). Given the TAB is the functional equivalent of a criminal court and the well-established logic of access to criminal courts, the Second Circuit held the First Amendment right to attend attached to TAB proceedings. *Id.* at 301-03. This holding is distinguishable because immigration court removal proceedings are not the functional equivalent of criminal litigation, and, unlike here, the plaintiff was not seeking to compel the production of documents. Also, Plaintiff has not alleged facts sufficient to show that "removal proceedings are no different from civil litigations," Compl., ¶ 12, or that the immigration court docket information and court orders they seek here have been historically open to the public, *id.,* ¶¶ 23-24, akin to Article III court proceedings. Fundamentally, Plaintiff's reliance on the First Amendment right recognized in *Richmond Newspapers* and its progeny is incorrect. The Supreme Court's holding in *Houchins* controls.

Plaintiff's claim must also fail because they seek equitable relief outside of FOIA's comprehensive statutory scheme for public access to Executive Branch records. "A court may not award equitable relief in contravention of the expressed intent of Congress." *Edwards v. I.N.S.*, 393 F.3d 299, 309 (2d Cir. 2004) (citation omitted); *see also Schweiker v. Chilicky,* 487 U.S. 412, 423, 426-27 (1988) (declining to create new substantive legal liability where Congress has designed a statutory scheme with remedial measures because the Court is "convinced that Congress is in a better position to decide whether or not the public interest would be served by creating it." (quotations omitted)). Plaintiff cannot circumvent the remedies and limitations of FOIA by attempting to invoke this Court's equitable authority.

* * * *

Defendants do not believe the defects identified above can be cured through amendment of the complaint. Defendants are prepared to move for dismissal of Plaintiff's claims within ten (10) days of any order granting Defendants leave to file and propose that subsequent briefing proceed pursuant to the timetable provided in the Local Rules.

Respectfully submitted,

*/s/ Olivia Hussey Scott*

Olivia Hussey Scott
Senior Counsel
Civil Division, Federal Programs Branch
U.S. Department of Justice

CC: All Counsel of record via ECF.